IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

S. GREGORY HAYS
Chapter 7 Trustee,

        Plaintiff,[1]

    v.

UHAUL INTERNATIONAL, INC.,
et al.,

        Defendants.

CIVIL ACTION FILE NO.

1:14-CV-02513-LMM-JFK

## AMENDED NON-FINAL REVISED REPORT AND RECOMMENDATION

Pending before the court is Defendants Uhaul International, Inc.'s, Uhaul of Georgia, Inc.'s, and John Brick's (collectively "U-Haul") motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, to compel arbitration and stay proceedings, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* [Doc. 6]. U-Haul contends that as a condition of Plaintiff Jeremaine Green's employment, he was required to agree to arbitration of all claims related to his employment and that, as a part of the electronic review of and execution of new-hire documents, he did agree to arbitrate all claims. [Id.]. Plaintiff opposes the motion on

---

[1] By order dated May 27, 2015, S. Gregory Hays, the bankruptcy trustee for Jeremaine Green's Chapter 7 bankruptcy estate, has been substituted as the named Plaintiff in this action. [Doc. 39]. However, for purposes of the discussion in this report and recommendation, the court will refer to Jeremaine Green as Plaintiff.

the sole ground that he did not electronically execute the arbitration agreement when hired by U-Haul and that, in fact, he was not even aware of that agreement until the motion to compel arbitration was filed by U-Haul. [Doc. 10].  Accordingly, Plaintiff contends that he is entitled to discovery and a jury trial on the issue of whether an arbitration agreement exists in this case.  [Id.].  U-Haul filed a reply asserting that Plaintiff's denial that he was aware of or executed the arbitration agreement, absent evidentiary support, is not sufficient to place into question the existence of an agreement to arbitrate.  [Doc. 12].  On November 19, 2014, the court issued a Final Report and Recommendation that U-Haul's motion be granted.  [Doc. 16].

Plaintiff's objections [Doc. 21] to the report and recommendation, which contested in part the undersigned's reliance on declarations and exhibits filed after the initial motion to dismiss or compel arbitration [Docs. 9, 12 & Attachments 1-7] was construed by the District Judge as a motion to file a sur-reply, which the District Court granted [Doc. 22].  The District Court referred the motion to dismiss or to compel back to the undersigned for reconsideration.[2]  [Id.].  This court, stating that all of the

_____

[2]UHaul Defendants also sought reconsideration of the District Judge's order referring the motion to compel back to the undersigned. [Doc. 24]. The District Judge granted the motion to the extent of considering the arguments raised therein but otherwise did not amend the order referring the motion to dismiss or compel arbitration back to the undersigned.  [Doc. 30].

2

materials submitted by the parties would be considered, set a final briefing schedule on the motion to compel arbitration.  [Doc. 32].  The parties filed their final briefs [Docs. 34 and 36] in which they reasserted the arguments made during initial briefing but based on the record now before the court, and the motion is before the court for a report and recommendation.

## I.       Background Facts

On August 4, 2014, Plaintiff, an African-American male, filed a complaint against U-Haul Defendants alleging racial discrimination and retaliation in the conditions of his employment pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.  [Doc. 1].  Plaintiff also intends to bring a claim for disability discrimination, based on the fact he is HIV positive, pursuant to the Americans with Disabilities Act, when he receives his right to sue notice on that claim from the Equal Employment Opportunity Commission ("EEOC").  [Id.].  Plaintiff contends that, although hired as a customer service representative, he was required to work outside servicing trucks and that, when he complained about discrimination based on his race, U-Haul retaliated against him resulting in his termination.  [Id.].  Plaintiff also contends that U-Haul failed to accommodate his disability by reassigning him, as he

3

requested, to customer service duties.  [Id.].  In lieu of a filing an answer, U-Haul filed the pending motion to dismiss or to compel arbitration.  [Doc. 6].

U-Haul utilizes an electronic process for employment applications.  [Doc. 9, Campbell Declaration ("Dec.") ¶ 4].   On March 19, 2013, Plaintiff applied for employment with U-Haul via the electronic application process, and he was hired starting his employment on March 27, 2013.  [Doc. 6-2, Garcia Dec. ¶¶ 7, 10 & Exh. A[3]; Campbell Dec. ¶ 6 & Exh. A[4]].  The on-line application process includes a number of prompts, the last asking "the applicant if he or she wishes to affix his or her electronic signature to the document and submit it."  [Garcia Dec. ¶ 8; Campbell Dec. ¶ 5].  To ensure authenticity of the electronic signatures, the applicant is required to type in his or her Social Security number several times during the process, and absent entry of a consistent Social Security number, the application is not accepted.  [Garcia Dec. ¶ 8].

On March 27, 2013, according to U-Haul representatives, Plaintiff arrived at the Peters Street location of U-Haul to complete the required new-hire forms.  The required forms include, but are not limited to, an I-9 Employment Eligibility

---

[3]The exhibits accompanying Garcia's declaration are filed at Doc. 7.

[4]This declaration is filed at Doc. 9.

4

Verification; W-4 tax withholding allowance certificate; driver's questionnaire; confidentiality agreement; productivity statement; drug testing consent-and-release form; employment dispute resolution ("EDR") policy; and new hire orientation and rules of communication.  [Garcia Dec. ¶¶ 11-12 & Exhs. B-E; Campbell Dec. ¶ 7 & Exhs. B-E; Doc. 12, Exhs. A-G].

According to Ms. Campbell, the General Manager of the U-Haul facility at the Peters Street location, she escorted Plaintiff to a computer terminal, logged into the on-line employment application system and opened up Plaintiff's hiring forms for his review and for him to sign electronically.  [Campbell Dec. ¶ 7].  Ms. Campbell left Plaintiff alone to review and sign the forms.  The electronic process operates by requiring a new hire, such as Plaintiff, to "click" on prompts generated by an automated system and to affix his electronic signature, by typing his name on the signature line, to each document.  When Defendant completed the process, he so advised Ms. Campbell.  [Id. ¶ 8].  Ms. Campbell stated that she did not complete the forms for Plaintiff or assist Plaintiff in completing the forms, did not electronically sign the forms for Plaintiff, and did not alter the documents[5] after Plaintiff executed

---

[5]No one else has access to the data base at the Peters Street location to access or alter the forms.  [Id. ¶ 9].

5

them.  She also stated that she has followed the same process for hundreds of new hires since she became General Manager.  [Id. ¶¶ 10-12].[6]  Although Plaintiff was free to refuse to accept the terms in the new-hire forms, if he had refused to sign each form, including the EDR, he would not have been hired by U-Haul.  [Campbell Dec. ¶ 13; and see Garcia Dec. ¶ 14].

U-Haul's EDR provides in pertinent part as follows.  Under the heading of "Notice To Employee About U-Haul's Employment Dispute Resolution Policy," the first paragraph states:  "Effective February 20, 2006, U-Haul Co. of Georgia adopted and implemented a new arbitration policy that requires mandatory, binding arbitration of disputes for all employees. . . .  IT APPLIES TO YOU. . . ."  [Campbell Dec., Exh. E].  The policy further states that the EDR "applies to all U-Haul Co. of Georgia employees regardless of length of service or status, and covers all disputes relating to or arising out of employment with U-Haul Co. of Georgia or the termination of that

---

[6]Mr. Garcia, as custodian of the electronic employment records for U-Haul, attested to the authenticity of the documents in Plaintiff's electronic personnel file. [Garcia Dec. ¶¶ 5-6, 11-13 & Exhs. B-E].  The screen shots for the new-hire documents in Plaintiff's personnel file indicate that, on March 27, 2013, the I-9 form was executed at 6:54:08.073 (Pacific time) and that, along with other forms in the new-hire package, the W-4 was executed that date at 6:58:06.933, the driver's questionnaire was executed that date at 7:05:06.370, that the EDR was executed that date at 7:06:32.857, and the final form, worker's compensation notice, was executed on that date at 7:07:53:310.  [Garcia Dec., Exhs. B-E; Doc. 12, Exhs. B-G].

employment." And the policy states, "<u>Your decision to accept employment or to continue employment with U-Haul Co. of Georgia constitutes your agreement to be bound by the EDR.</u>" [<u>Id.</u> (emphasis in original)].

In his first declaration offered in opposition to the motion to compel arbitration, Plaintiff denies statements contained in Mr. Garcia's affidavit, including: that Plaintiff signed the arbitration agreement and that Ms. Campbell logged into the on-line system, retrieved Plaintiff's application and opened up the hiring forms for Plaintiff to review and sign.[7] [Doc. 10-1 ("Plaintiff Dec.") ¶¶ 2-4]. Plaintiff states, "Specifically, I never electronically (or otherwise) signed Exhibit E[, the EDR,] to Mr. Garcia's Affidavit and I was never told or made aware of the existence of an Arbitration Agreement that related to my employment at U-Haul. I have never seen Exhibit E before it was filed as an Exhibit to Mr. Garcia's Affidavit." Plaintiff also stated that he did not give anyone else permission to execute the document for him. [<u>Id.</u> ¶¶ 4-5].

---

[7]Plaintiff also states, "While it was well known that Ms. Campbell had access to change employee records and that she would change employee time records, she did not ever open up my application and show me hiring forms for me to electronically sign." [Plaintiff's Dec. ¶ 4]. Plaintiff provides no foundation for his statement that "it was well known" concerning Ms. Campbell's alleged activities. The court will not further address this statement by Plaintiff.

7

As part of his objections to the report and recommendation, Plaintiff provided a second declaration in which he denied most of the statements made by Ms. Campbell regarding the events on March 27, 2013, with the exception of the fact that he did go to the store on that date and met with Ms. Campbell.[8] [Doc. 21-1 ("Plaintiff 2nd Dec.") ¶¶ 2-3].[9] He states that when he arrived at the store, Ms. Campbell asked him for his driver's license and social security card[10] and that she took him for a tour of the store.

_____

[8]Plaintiff also submitted the affidavits of Brian Doyle and Alex Martin in support of his opposition to the motion. [Doc. 23, Doyle Affidavit ("Aff.") and Martin Aff.]. Defendant asserts that these affidavits are not probative of the issue before this court. [Doc. 34 at 13-16]. The court agrees with Defendant. The events about which Doyle and Martin attest occurred in December 2010 and involve their new-hire processing by Toyia Seaborne, the then General Manager at the U-Haul Peter Street location. [Doyle Aff.; Martin Aff.]. Events occurring over two years before Plaintiff Green was hired and processing by a different manager, Ms. Seaborne, are not probative of the issue before the court. See Doyle v. U-Haul Intern'l, Inc., et al., 1:15-CV-118-AT-WEJ, Doc. 10, Report and Recommendation at 3 n.1 (N.D. Ga. April 29, 2015) (in that case, plaintiff Doyle offered the declaration of plaintiff Green describing the process he went through in applying for employment at U-Haul in March 2013 with Ms. Campbell handling his application process; however, because plaintiff Doyle began his employment with U-Haul on December 24, 2010, two years earlier and because Toyia Seaborne handled Mr. Doyle's application process, not Ms. Campbell, the court found Mr. Green's Declaration irrelevant and did not consider it), adopted by Doc. 14 (N.D. Ga. May 27, 2015). This court, likewise, will not consider Doyle's and Martin's affidavits.

[9]A duplicate of this declaration is located at Doc. 36-4.

[10]Plaintiff speculates that Ms. Campbell copied these documents, however, because he failed to provide a foundation for this statement, the court will not further

8

Plaintiff states, "I did not get on a computer at all, for any reason." [Id. ¶ 4]. Although Plaintiff does not claim to know who completed the forms, he swears "that, other than my application, [he] did not sign them, electronically or otherwise, or give [Ms. Campbell] or any other person permission to sign them." [Id. ¶ 5]. Plaintiff denied ever seeing or being "told about any kind of arbitration agreement or policy" prior to the motion to compel being filed "so [he] could not have and did not agree to be bound by any such agreement." [Id.]. Plaintiff also states that the forms that were completed indicate that someone used his driver's license and social security card information provided to Ms. Campbell. [Id. ¶¶ 6-7]. With respect to the Driver Questionnaire [Doc. 12, Exh. D], Plaintiff states that incorrect information is on the form "where it shows that [he] had 20,000 miles of tractor-trailer experience" when he only has "about 6000 to 7000 miles . . . . [He] did not fill out Exhibit D and would have had no reason to fill it out, since [he] was applying to be a Customer Service Representative and not a driver." [Plaintiff's 2nd Dec. ¶ 7]. Denying that he would place any false information on the form, he states that "whoever filled it out just put down a random number for the number of miles . . . because they didn't know the answer to the question." [Id. ¶ 8]. Plaintiff denies ever seeing the "New-hire Orientation for Full-

---

address his assumption.

Time U-Haul Team Members" [Doc. 12, Exh. G] and states that might be because he was only a part-time employee. Although told that he would be receiving an employee handbook, Plaintiff denies ever receiving "any employee handbook or policies." [Plaintiff's 2nd Dec. ¶ 9].

Additional facts will be set forth as necessary during discussion of U-Haul's motion.

## II.    Discussion

U-Haul contends that Plaintiff Green entered into a binding arbitration agreement that covers the claims brought in this lawsuit against all Defendants and that, accordingly, the court should compel arbitration. [Docs. 6 and 34].[11]  Pursuant to the FAA, U-Haul moves to compel arbitration and to stay the instant proceedings. [Id.].  Section 2 of the FAA provides that a written agreement to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Sections 3 and 4 of the FAA mandate that federal district courts shall stay the proceedings and

---

[11]U-Haul filed the motion in the alternative, seeking either dismissal of the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or to compel arbitration with a stay of these proceedings. [Id.].  This court will treat the motion as one to compel arbitration and to stay the proceedings as is customarily the practice in this district.

"direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 105 S. Ct. 1238, 1241 (1985). However, as subsequently held by the Eleventh Circuit Court of Appeals, although "the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005).

There is no question that arbitration agreements in employment contracts are enforceable and are covered by the FAA. See Circuit City Stores, Inc. v. Adams, 121 S. Ct. 1302, 1311 (2001) (holding that FAA provisions apply to arbitration agreements contained in employment contracts). Additionally, "[i]t is clear by now that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Gilmer v. Interstate/Johnson Lane Corp., 111 S. Ct. 1647, 1652 (1991). And these statutory claims may include allegations of discriminatory practices with respect to a party's employment. See id. at 1652-54; Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998).

In order to determine whether arbitration should be compelled, absent the parties contracting an alternative means, which is not an issue in this case, "the Court must assess whether: '(1) there is a valid written agreement to arbitrate; (2) the issue

11

[sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.'" Lomax v. Woodmen of the World Life Ins. Society, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002) (citation omitted).   Georgia contract law determines whether there is a valid arbitration agreement.  "Under Georgia law, a contract is enforceable if there is (a) a definite offer and (b) complete acceptance (c) for consideration." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008).   Plaintiff's only challenge to the motion to compel arbitration or the arbitration agreement is the claim that he did not enter into any such agreement and that, in fact, he was unaware of any arbitration agreement being a condition of his employment. [Doc. 36].  Given this challenge, the court "must decide if the arbitration clause is enforceable against the parties. . . .  Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992).

The Eleventh Circuit Court of Appeals has stated "that a party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial. . . .  More specifically, [the court] require[s] a party resisting arbitration to 'substantiate[ ] the denial of the contract with enough evidence to make the denial colorable.'" Magnolia Capital Advisors Inc. v.

12

Bear Stearns & Co., 272 Fed. Appx. 782, 785 (11th Cir. 2008) (citations omitted); see also Chastain, 957 F.2d at 855 ("A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists.  Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable.").  Applying the standard utilized for summary judgment motions, the court in Magnolia Capital Advisors stated, "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Id. at 785-86 (citation and internal quotation marks omitted).  And "a district court considering the making of an agreement to arbitrate, should give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise." Id. at 786 (citation and internal quotation marks omitted).  If the arbitration agreement is "put 'in issue,'" the FAA "requires the district court to 'proceed summarily to the trial thereof' and if the objecting party has not requested a jury trial, 'the court shall hear and determine such issue.'" Id. at 785 (quoting 9 U.S.C. § 4).  Plaintiff has requested a jury trial to resolve the issue of whether an arbitration agreement exists between the parties.  [Doc. 10 at 3, 5].

13

The court finds that Plaintiff has unequivocally denied the existence of any arbitration agreement with U-Haul and that he has produced "some evidence" to establish a "colorable" denial of the existence of the agreement in this case.  Plaintiff's denial is supported by his affidavit and the information contained therein which casts doubt on whether he completed the new hire on-line paperwork.  See Regan v. Stored Value Cards, Inc., 2015 WL 570524, at *4 (N.D. Ga. January 13, 2015) (finding that the plaintiff satisfied the second part of the test by offering his supporting affidavit "'which in most cases would be sufficient to require a jury determination of whether there had in fact been a meeting of the minds'") (citation omitted); Mullinax v. United Marketing Group, LLC, 2011 WL 4085933, at *9 (N.D. Ga. September 13, 2011) (finding that the plaintiff's averment was an "'unequivocal denial' that the agreement ha[d] been made[,]" the court concluded that this "assertion . . . sufficiently contradicts [the defendant's] version of the events to create a genuine question as to whether the parties agreed to arbitrate"); Garcia v. Mason Contract Products, LLC, 2009 WL 1851131, at *2 (S.D. Fla. June 29, 2009) ("the party resisting arbitration must 'make the denial colorable[,]' . . . [and t]his can be achieved by supporting affidavits, which in most cases 'would be sufficient to require a jury determination of whether there had

14

in fact been a meeting of the minds', *or* by producing other material evidencing the lack of an arbitration agreement") (citations omitted; emphasis added).

In support of the motion to compel arbitration, Defendant presented the declarations of two U-Haul officials, along with electronic records from Plaintiff's personnel file.  [Garcia Dec., Exhs. A-E; Campbell Dec., Exhs. A-E; Doc. 12, Exhs. A-G].  On March 27, 2013, Ms. Campbell stated that Plaintiff arrived at the Peters Street location of U-Haul to complete the required new-hire forms.  [Garcia Dec. ¶¶ 11-12 & Exhs. B-E; Campbell Dec. ¶ 7 & Exhs. B-E; Doc. 12, Exhs. A-G].  According to Ms. Campbell, she escorted Plaintiff to a computer terminal, logged into the on-line employment application system and opened up Plaintiff's hiring forms for his review and for him to sign electronically.  [Campbell Dec. ¶ 7].  Ms. Campbell left Plaintiff alone to review and sign the forms - a process that operates by requiring the newly hired employee to "click" on prompts generated by an automated system and to affix his electronic signature, by typing his name on the signature line, to each document. According to Ms. Campbell, when Plaintiff completed the process, he so advised Ms. Campbell.  [Id. ¶ 8].  The screen shots for the new-hire documents in Plaintiff's personnel file indicate that, on March 27, 2013, the I-9 form (containing information from Plaintiff's driver's license and social security card) was executed at 6:54:08.073

15

(Pacific time), that the W-4 (also containing information that information) was executed that date at 6:58:06.933, that the driver's questionnaire (again containing information allegedly known only to Plaintiff) was executed that date at 7:05:06.370, that the EDR was executed that date at 7:06:32.857, and the final form, a worker's compensation notice, was executed that date at 7:07:53:310. [Garcia Dec., Exhs. B-E; Doc. 12, Exhs. B-G]. Ms. Campbell stated that she did not complete the forms for Plaintiff or assist Plaintiff in completing the forms, did not electronically sign the forms for Plaintiff, and did not alter the documents after Plaintiff executed them. [Campbell Dec. ¶¶ 10-11]. And, although Plaintiff was free to refuse to accept the terms in the new-hire forms, if he had refused to sign them, he would not have been hired by U-Haul. [Campbell Dec. ¶ 13; and see Garcia Dec. ¶ 14].

In support of his opposition to the motion, Plaintiff provided two sworn declarations. [Plaintiff's Dec.; Plaintiff's 2nd Dec.]. Plaintiff does not dispute that he completed the application for the position with U-Haul by using the on-line process employed by U-Haul and electronically signing the application. [Plaintiff's 2nd Dec. ¶ 5]. However, he specifically and unequivocally denies completing any on-line new hire forms on March 27, 2013, disputing the specific factual allegations made by Ms. Campbell, and he specifically denies ever being aware of the arbitration agreement or

16

policy.  [Id. ¶¶ 3-9].  Plaintiff states that when he arrived at the store, Ms. Campbell asked him for his driver's license and social security card and that she took him for a tour of the store.  Plaintiff states, "I did not get on a computer at all, for any reason." [Id. ¶ 4].  Although Plaintiff does not claim to know who completed the forms, he swears "that, other than my application, [he] did not sign them, electronically or otherwise, or give [Ms. Campbell] or any other person permission to sign them."  [Id. ¶ 5].  Plaintiff denied ever seeing or being "told about any kind of arbitration agreement or policy" prior to the motion to compel being filed "so [he] could not have and did not agree to be bound by any such agreement."  [Id.].

To explain how personal information appeared on the completed forms, Plaintiff points to the fact that Ms. Campbell asked for and received from him his driver's license and social security card.  [Id. ¶¶ 4, 6-7].  And Plaintiff points out that information on the driver's questionnaire regarding the number of miles of his tractor-trailer experience is incorrect indicating that someone else completed the form because he would have no reason to provide false information.  [Id. ¶¶ 7-8].  Plaintiff denies ever seeing the "New-hire Orientation for Full-Time U-Haul Team Members" [Doc. 12, Exh. G] and states that might be because he was only a part-time employee.

17

Although told that he would be receiving an employee handbook, Plaintiff denies ever receiving "any employee handbook or policies." [Plaintiff's 2nd Dec. ¶ 9].

The court finds, giving Plaintiff "the benefit of all reasonable doubts and inferences that may arise" from the record, Magnolia Capital Advisors, 272 Fed. Appx. at 786, that his sworn unequivocal denial of accessing and executing the on-line forms, including the EDR, or of being aware of the EDR and arbitration policy, along with the reasoning provided in his second declaration for that denial, creates a "genuine issue of fact concerning the formation of the agreement" preventing the court from deciding "as a matter of law that the parties did or did not enter into such an agreement[,]" Id. at 785-86.

In the motion to compel arbitration, U-Haul also contended that Plaintiff's continued employment constituted acceptance of the arbitration agreement [Doc. 12 at 9-12]; however, that argument is not asserted in the final brief [Doc. 34]. U-Haul initially contended that because Plaintiff worked for U-Haul from March 27, 2013, through April 16, 2014, under the terms of the arbitration policy, he is bound by that policy, even if the court found that he did not execute the EDR during the new-hire process. [Id.]. As noted, Plaintiff swore that he neither executed *nor was even aware*

18

*of the EDR* until that document was filed in support of the instant motion.  [Plaintiff's Dec. ¶¶ 4-5; Plaintiff's 2nd Dec. ¶¶ 5, 9].

U-Haul is correct that, because arbitration agreements need only be in writing and need not be signed, the evidence before the court need not demonstrate that Plaintiff signed the EDP - which is undeniably in writing.  Caley, 428 F.3d at 1373-74. U-Haul is also correct that, under Georgia contract law, "[a]n offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing."  Id. at 1374 (quoting Moreno v. Strickland, 255 Ga. App. 850, 853, 567 S.E.2d 90, 92-93 (2002)) (internal quotation marks omitted); and see Athon v. Direct Merchants Bank, 2007 WL 1100477, at *4 (M.D. Ga. April 11, 2007) ("the parties to an arbitration agreement may demonstrate their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement even though they do not sign it") (citing, *inter alia*, Comvest, LLC v. Corporate Sec. Group, Inc., 234 Ga. App. 277, 280, 507 S.E.2d 21, 24-25 (1998)).  The EDR in this case specifically set forth the terms governing acceptance of the contract: "Your decision to accept employment or to continue employment with U-Haul Co. of Georgia constitutes your agreement to be bound by the EDR."  [Campbell Dec., Exh. E].  And Georgia contract principles provide "that an employee can accept new terms

19

of employment of which the employee is *aware* by remaining in employment." Caley, 428 F.3d at 1374 (emphasis added).

The problem for U-Haul, if still relying on this alternative argument, is that Plaintiff's conduct, that is, remaining an U-Haul employee, can only be deemed his agreement to be bound by the terms of the EDR *if* he was aware of the mandatory arbitration policy and that his employment constituted acceptance of the policy. A party simply cannot be bound by the terms of a contract based on his conduct if he was unaware that such conduct constituted acceptance. In Caley, the court found that the evidence supported a finding that the plaintiff was aware of the arbitration policy and that being aware of that policy, which made arbitration mandatory upon continued employment, he continued his employment. The plaintiff was, therefore, bound by the arbitration agreement. Caley, 428 F.3d at 1374-75.

Likewise, in Athon and in Honig v. Comcast of Georgia, LLC, 537 F. Supp. 2d 1277 (N.D. Ga. 2008), the courts found that the plaintiffs' course of conduct bound them to the arbitration agreements at issue under circumstances that supported a finding that the plaintiffs were aware of the arbitration provisions. Honig, 537 F. Supp. 2d at 1283-84; Athon, 2007 WL 1100477, at **4-5. And see McBride v. Gamestop, Inc., 2011 WL 578821, at *3 (N.D. Ga. February 8, 2011) (finding that

20

signatures on forms "demonstrate that [Plaintiffs] were, at a minimum, aware of the Arbitration Agreement" and that defendant's actions in distributing and displaying information about the arbitration agreement to employees, supported the conclusion that "[o]nce Plaintiffs became aware of the Arbitration Agreement, their continued employment constituted acceptance . . ."); Johnson v. Macy's South, LLC., 2007 WL 2904126, at **3-4 (N.D. Ga. September 27, 2007) (finding that the defendants communicated the offer of the arbitration agreement by informing employees, including the plaintiff, of the terms and how to opt out of the agreement and that, being informed, plaintiff's failure to act constituted acceptance).  The undersigned did not find any legal authority, interpreting Georgia contract law, that supported a finding that a party could be bound to the terms of a contract by his or her conduct absent evidence that he or she was at least aware of the terms of the proposed contract.  Accordingly, unless the court finds that Plaintiff's denial of being aware of the EDR is insufficient to present a colorable challenge to his knowledge of the EDR's existence, Defendant's alternative argument offers no additional support for the motion to compel arbitration. In other words, U-Haul's alternative argument does not make Plaintiff's denials irrelevant to the court's analysis.  For the same reasons stated *supra*, however, the

court finds that there is a genuine issue of fact as to whether Plaintiff was aware of the EDR and arbitration policy.

U-Haul offers a number of cases as support for the assertion that Plaintiff's sworn declarations, although containing an unequivocal denial of executing or being aware of the arbitration agreement and policy, are insufficient to make his "denial colorable." [Doc. 34]. However, given the record before the court at this time, the court finds, as will be discussed *infra*, significant distinguishing facts in those cases which undermine any persuasive value. The court finds the following facts in this case significant when considering the cases relied on by U-Haul. Although Plaintiff apparently initiated contact with U-Haul and prepared and submitted the employment application form from a computer of his choosing, the EDR and arbitration policy was not a part of the application paperwork. [Garcia Dec. ¶¶ 7, 10 & Exh. A]. Accordingly, any security measures associated with completion of the application is immaterial to the new-hire processing conducted on March 27, 2013. On March 27, 2013, at the Peters Street office, Ms. Campbell, not Plaintiff, logged into the new-hire forms on a company computer, and no security measures, such as a personal employee PIN or password associated with Plaintiff, was utilized by the individual completing the forms; anyone could have accessed the forms and typed in Plaintiff's name and/or

22

initials on each page before clicking to the next page.  [Campbell Dec. ¶ 7 & Exhs. B-E; Doc. 12, Exhs. A-G].  The forms and/or other information concerning the EDR were not emailed to an email address unique to Plaintiff[12] and, thereafter, accessed by him as demonstrated by the email server or other electronic means.  There is no evidence that Plaintiff attended training on the arbitration policy.

In Anderson v. Xerox Corp., 2014 WL 4187521 (D. Or. August 21, 2014), the facts establish that the defendant emailed to the plaintiff, an existing employee, a revised version of the company's arbitration policy which the defendant established the plaintiff opened on the same day and, thereafter, continued his employment.  Id., at *1.  In fact, the plaintiff did not dispute receiving that email and an employee handbook discussing the policy and receiving training about the policy or that he

---

[12]"When a defendant has produced evidence showing that it sent an item properly mailed, or in this case emailed, there arises a rebuttable presumption that it was received by the addressee. . . .  This presumption cannot be overcome merely by stating in an affidavit that the plaintiff never received the agreement."  Corbin v. Affiliated Computer Services, Inc., 2013 WL 3804862, at *6 (M.D. Fla. July 19, 2013); and see Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390, 400 (S.D. N.Y. 2013) (same); Abdullah v. American Express Co., 2012 WL 6867675, at **4-5 (M.D. Fla. December 19, 2012) (same) (citing American Boat Co., Inc. v. Unknown Sunken Barge, 418 F.3d 910, 914 (8th Cir. 2005) ("a presumption of delivery should apply to e-mails")).  Accordingly, those cases relied on by U-Haul involving email notification to plaintiffs/employees are not persuasive in determining the sufficiency of Plaintiff Green's sworn denials.

continued to work after these events.  Id., at *3.  Accordingly, even if the plaintiff did not sign the arbitration agreement, his continued employment after acknowledging receipt of the policy, constituted acceptance of the arbitration agreement.[13]  Id.  U-Haul did not any present proof of Plaintiff's knowledge of the EDR besides Ms. Campbell's statement, which is refuted by Plaintiff's denial, to substantiate that Plaintiff was aware of the EDR.

In Perry v. AD Astra Recovery Services, Inc., 2014 WL 2765465 (E.D. Mo. June 18, 2014), the plaintiff accessed a web site and completed an on-line loan application which included providing "authenticating information regarding her identity and creditworthiness, clicking through a number of screens, and concluding with [her] review and entry of her initials agreeing to the terms of the document" which included an arbitration clause.  Id., at *3.  The plaintiff acknowledged acquiring a loan from the company on whose behalf the defendant was acting as a collection agent and using the proceeds of the loan.  Id.  Despite the plaintiff's adamant denials of signing the agreement, the court found that the security measures, including

---

[13]Additionally, when the plaintiff applied for employment, he was required to log into a computer system and enter personal information, clicking through a series of documents - which included the original arbitration policy - and initialing each page to signify acceptance.  Id., at *3.  As noted, U-Haul's EDR was not part of the application package completed by Plaintiff Green.

verifying the personal information provided to complete the on-line loan process, refuted her denial. Id. Plaintiff Green did not independently access the new-hire forms by going on-line, and he has offered an explanation as to how U-Haul had access to the few pieces of personal information appearing on the forms.

In Jones v. U-Haul Co. of Massachusetts and Ohio, Inc., 16 F. Supp. 2d 922 (S.D. Ohio 2014), the facts are likewise distinguishable. In that case, the plaintiff was an existing employee who was instructed to access via computer the defendant's Human Resources Service Center, which all employees were familiar with and which implemented procedures to protect the authenticity of on-line activity by employees. Id. at 934. Included in these procedures was the requirement that employees enter their social security number or a confidential, self-selected password, along with their names. Id. To counter this evidence, the plaintiff apparently did not even submit an affidavit but rested on her counsel's unsubstantiated allegation that she had no recollection of signing in any manner the arbitration agreement. Id. The court concluded, "In light of the evidence submitted by defendants and the *lack* of any evidence whatsoever submitted by Jones to the contrary, the Court finds that Jones's electronic signature . . . is authentic, valid and binding." Id. at 935 (emphasis added). In this case, again, Plaintiff Green was not an existing employee accessing on his own

25

a secure human resources website.   And more importantly, Plaintiff's denial is substantiated with his affidavit that offers an alternative, reasonable explanation for the events on March 27, 2013.[14]

Owings v. T-Mobile USA, Inc., 978 F. Supp. 2d 1215 (M.D. Fla. 2013), did not involve an electronic signature by an employee on an arbitration agreement but the entry into a written service agreement with T-Mobile, with that service agreement bearing the plaintiff's written signature. Id. at 1218-19. After entering the service agreement, which included an arbitration provision, the plaintiff used the service and made payments for three to four months before attempting to cancel service. Id. at 1219. Despite the plaintiff's unequivocal denial contained in an affidavit of entering *any* contract with the defendant, the court found that the plaintiff relied on the contract

---

[14]In a footnote, U-Haul cites three other cases involving the same EDR policy [Doc. 34 at 12 n.6]; however, the court finds that citation to these cases does not support the motion to compel.  In Charles v. U-Haul Intern'l, 2013 WL 1816357 (S.D. Tex. April 29, 2013), the plaintiff did not dispute the existence of an arbitration agreement but, instead, contended that the defendant's conduct waived enforcement. In Robertson v. U-Haul Co., 2011 WL 444773 (N.D. Tex. February 7, 2011), the plaintiff acknowledged being aware of the arbitration policy but challenged whether continuing his employment constituted acceptance of the policy.  And in Konig v. U-Haul Co., 145 Cal. App. 4th 1243, 52 Cal. Rptr. 3d 244 (2006), a decision later superseded, the court did not address the plaintiff's claims regarding whether he executed the arbitration agreement but focused on whether the agreement was unconscionable.

26

by using the cellular service and paying for that service, without any challenge for several months, and that he was bound by the arbitration provision. Id. at 1223. Under such circumstances, not present in the case before this court, the court understandably found the plaintiff's sworn unequivocal denial insufficient.

And, in Newton v. American Debt Services, Inc., 854 F. Supp. 2d 712 (N.D. Cal. 2012), the facts involved a party's on-line application via a web site for debt relief services with the plaintiff contending that there was no proof that the electronic signature on the contract was hers. Id. at 731. This contract was executed using an outside company, DocuSign, "a company that is used to electronically sign documents in compliance with the U.S. Electronic Signatures in Global and National Commerce Act . . . ." Id. DocuSign, following established procedures, electronically sends documents to the customer to open and review and then to sign by creating a signature and confirming that signature. Each signature is given an identifying code, as appears on the contract being contested by the plaintiff. Id. The defendant utilized DocuSign to send the contract to the plaintiff and subsequently received a signed contract. Id. U-Haul does not contend that DocuSign or a similar method to verify Plaintiff Green's signature was utilized in this case.[15]

---

[15]Other cases cited by U-Haul have similar distinguishing facts. In Honig, 537 F. Supp. 2d at 1283, the plaintiff did not provide a sworn statement in support of her denial of an executed arbitration agreement which contained her written, not electronic,

The court finds that U-Haul's arguments based on these cited cases are not persuasive.  Under the circumstances of this case, based on the record now before the court, the court finds that Plaintiff's unequivocal denial when considered with the information provided in the his sworn statement constitutes "some evidence to substantiate the denial." <u>Magnolia Capital Advisors</u>, 272 Fed. Appx. at 785.  The court finds that Plaintiff is entitled to a jury trial on the question of the existence of an enforceable arbitration agreement.  <u>See</u> 9 U.S.C. § 4 (if requested by the party opposing the motion to compel, the FAA provides for a jury trial on this issue).

## III.   Conclusion

For the reasons stated above, the court **RECOMMENDS** that the District Court **HOLD A TRIAL** pursuant to 9 U.S.C. § 4 to determine whether an arbitration agreement exists and, accordingly, whether U-Haul's motion [Doc. 6] to compel should be granted or denied.

---

signature.  In <u>Dale v. Comcast Corp.</u>, 453 F. Supp. 2d 1367, 1378-79 (N.D. Ga. 2006), <u>reversed and remanded</u> 489 F.3d 1216, 1218 n.1 (11th Cir. 2007) (not addressing the plaintiffs' claims for a jury trial on the existence of the agreement), the facts involved written contracts for service with Comcast and evidence that the plaintiffs received notice, in one of many ways, of the existence of the arbitration agreement and thereafter continued to use and pay for services.

AO 72A
(Rev.8/82)

**SO RECOMMENDED** this 23rd day of June, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)